**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

ROBERT JONES,

        Plaintiff,

  v.

HEALTHPEAK PROPERTIES, INC.,
KATHERINE M. SANDSTROM,
SCOTT M. BRINKER,
BRIAN G. CARTWRIGHT,
JAMES B. CONNOR,
CHRISTINE N. GARVEY,
R. KENT GRIFFIN, JR.,
DAVID B. HENRY, and
SARA GROOTWASSINK LEWIS,

        Defendants.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND
JURY DEMAND**

Plaintiff Robert Jones ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.      This is a stockholder action brought by Plaintiff against Healthpeak Properties, Inc. ("Healthpeak" or the "Company") and the members of Healthpeak's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"),

in connection with the Board's attempt to combine Healthpeak with Physicians Realty Trust ("Physicians") (the "Proposed Transaction").

2.  On October 29, 2023, Healthpeak, Physicians, Healthpeak's wholly owned subsidiary, DOC DR Holdco, LLC ("DOC DR Holdco"), Healthpeak OP, LLC's ("Healthpeak OP") wholly owned subsidiary, DOC DR, LLC ("DOC DR OP Sub"), and Physicians Realty L.P. entered into an Agreement and Plan of Merger (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, each common share of beneficial interest of Physicians will be converted into the right to receive 0.674 of a newly issued share of Healthpeak common stock. Upon closing of the Proposed Transaction, Healthpeak stockholders will own approximately 77% and Physicians stockholders will own approximately 23% of the combined company, respectively.

3.  Under the Merger Agreement, Healthpeak is required to issue additional shares of Healthpeak common stock (the "Share Issuance").  As a New York Stock Exchange ("NYSE") listed company, Healthpeak is required by NYSE listing rules to secure shareholder approval before issuing 20% or more of its outstanding common stock.  Thus, the Proposed Transaction is contingent upon Healthpeak shareholders voting to approve the proposed Share Issuance.

4.  On January 11, 2024, the Board authorized the filing of the materially incomplete and misleading Form 424B3 Prospectus (the "Prospectus") with the SEC.  Specifically, the Prospectus, which recommends that Healthpeak stockholders vote their shares in favor of the Share Issuance and Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) Healthpeak's and Physicians' financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Barclays Capital Inc. ("Barclays"); and (iii) potential conflicts of interest faced by Barclays, the Company's additional financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley") and

additional financial advisors retained by the Company (as further defined below, the "Additional Financial Advisors").

5. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Healthpeak stockholders need such information in order to make a fully informed decision in connection with the Share Issuance and Proposed Transaction.

6. The special meeting for Healthpeak stockholders to vote on the Share Issuance and Proposed Transaction is currently scheduled for February 21, 2024. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Healthpeak's other shareholders to make an informed decision whether to vote their shares in favor of the Share Issuance and Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Healthpeak's principal executive offices are located in this District, rendering venue in this District appropriate.

## THE PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of Healthpeak common stock.

11. Defendant Healthpeak is a Maryland corporation, with its principal executive offices located at 4600 South Syracuse Street, Suite 500, Denver, Colorado 80237. Healthpeak's shares trade on the NYSE under the ticker symbol "PEAK."

12. Defendant Katherine M. Sandstrom has been Chair of the Board and a director of the Company at all relevant times and previously served as Vice Chair of the Board from April 2022 until April 2023.

13. Defendant Scott M. Brinker ("Brinker") has been President, Chief Executive Officer, and a director of the Company at all relevant times. Defendant Brinker previously served as President and Chief Investment Officer from January 2019 to October 2022 and as Executive Vice President and Chief Investment Officer from March 2018 to December 2019.

14. Defendant Brian G. Cartwright has been a director of the Company at all relevant times and previously served as Chairman of the Board from May 2018 until April 2023.

15. Defendant James B. Connor has been a director of the Company at all relevant times.

16. Defendant Christine N. Garvey has been a director of the Company at all relevant times.

4

17. Defendant R. Kent Griffin, Jr. has been a director of the Company at all relevant times.

18. Defendant David B. Henry has been a director of the Company at all relevant times.

19. Defendant Sara Grootwassink Lewis has been a director of the Company at all relevant times.

20. Defendants identified in paragraphs 12-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21. Healthpeak is organized to qualify as a real estate investment trust ("REIT") and, together with its consolidated entities, invests primarily in real estate serving the healthcare industry in the U.S. Healthpeak is the managing member of Healthpeak OP. The Company acquires, develops, owns, leases and manages health care real estate. Healthpeak's portfolio is comprised of investments in the following reportable healthcare segments: (i) lab; (ii) outpatient medical; and (iii) continuing care retirement community. As of September 30, 2023, Healthpeak's portfolio of investments, including properties in its unconsolidated joint ventures, consisted of interests in 475 properties, including approximately 12 million square feet of lab properties, approximately 24 million square feet of outpatient medical properties and 15 continuing care retirement community properties consisting of 7,112 units.

### The Proposed Transaction

22. On October 30, 2023, Healthpeak announced the Proposed Transaction, stating, in relevant part:

> DENVER & MILWAUKEE--(BUSINESS WIRE)-- Healthpeak Properties, Inc. (NYSE: PEAK) ("Healthpeak" or "PEAK") and Physicians Realty Trust (NYSE:

5

DOC) ("Physicians Realty Trust" or "DOC") today announced they have entered into a definitive agreement to combine in an all-stock merger of equals valued at approximately $21 billion. Under the terms of the agreement, each Physicians Realty Trust common share will be converted into 0.674 of a newly issued Healthpeak common share.

The combined company will be the leading real estate platform dedicated to healthcare discovery and delivery with a 52 million square foot portfolio, including 40 million square feet of outpatient medical properties concentrated in high-growth markets such as Dallas, Houston, Nashville, Phoenix, and Denver. The combined company also will benefit from both companies' extensive relationships with the nation's leading health systems.

"This combination joins two leading platforms, bringing them to the next level to create a company uniquely focused on healthcare discovery and delivery, a large and attractive playing field with strong secular growth," said Scott Brinker, President and Chief Executive Officer of Healthpeak. "Physicians Realty Trust brings complementary strengths to Healthpeak, including its internal property management platform and established industry relationships. With a broader footprint in strategically important markets and a high-quality portfolio, we will be able to better serve the real estate needs of leading health system, physician, and biopharma tenants, which we believe is a competitive advantage that should lead to more opportunities for growth and enhanced value creation for shareholders. We expect the transaction to be immediately accretive to each company's shareholders, augment our strong balance sheet, and position the combined company for offense."

John T. Thomas, President and Chief Executive Officer of Physicians Realty Trust, added, "The Physicians Realty Trust team is excited to join with Healthpeak and continue our growth, success, and sustainable value creation as a combined company with increased scale and diversification, including Healthpeak's best-in-class lab portfolio. I've known Scott for many years and believe that together, we will be able to leverage the power of both our platforms and people to support the growth of our health system partners and help shape the future of health care delivery. We are confident in our strategic vision to capitalize on our increased scale, complementary platforms, and deep relationships to create immediate and future value for both shareholders and tenants."

The merger is expected to generate run-rate synergies of at least $40 million by the end of year one and up to $60 million by the end of year two. Given the synergy profile, the transaction is expected to be accretive to run-rate AFFO per share and FFO per share (subject to final merger accounting adjustments) for both Healthpeak and Physicians Realty Trust shareholders.

**KEY BENEFITS OF THE MERGER**

The merger of Healthpeak and Physicians Realty Trust is expected to create meaningful strategic, operational, and financial benefits, including:

- **Transformative Scale:** Creates a differentiated company that benefits from the secular growth in healthcare discovery and delivery with a 52 million square foot portfolio including one of the largest outpatient medical portfolios comprising 40 million square feet, concentrated in high-growth markets and affiliated with leading hospitals and health systems

- **Complementary Expertise:** Expands industry-leading relationships across health system, biopharma, and physician tenants; leverages the competitive strengths and complementary capabilities of both platforms to drive growth from implementing best-practices in property management, leasing, asset management, and technology to establish the leading integrated healthcare discovery and delivery platform

- **Broader and Deeper Relationships with Increased** Diversification**:** Overlapping real estate footprint in more than 30 markets increases the combined platform's competitive advantage, broadens and deepens relationships with top health systems creating outsized internal and external growth opportunities; combined diversified tenant roster is comprised of the world's leading health system, biopharma, and physician tenants; top 10 tenants represent 21% of combined annualized base rent with 7 out of the top 10 investment-grade rated

- **Accretive Financial Impact:** Expected to be accretive to both Physicians Realty Trust's and Healthpeak's standalone AFFO and FFO (subject to final merger accounting adjustments) and augments Healthpeak's strong balance sheet with pro forma leverage in the low 5x net debt to EBITDAre range; expected to generate run-rate synergies of at least $40 million by the end of year one and up to $60 million by the end of year two, with the potential for additional incremental revenue growth and cost savings from implementing best practices across both platforms; a more efficient G&A cost structure and increased liquidity is expected to improve the cost of capital for the combined company and increases accretion from external growth

**LEADERSHIP AND ORGANIZATION**

The combined company will be led by Scott Brinker as President and Chief Executive Officer, Peter Scott as Chief Financial Officer, and John Thomas as Vice Chair of the Board who will have an active role in strategy, relationships, and business development.

The board of directors of the combined company will be comprised of eight existing Healthpeak directors and five existing Physicians Realty Trust directors, including John Thomas and former Secretary of the U.S. Health and Human Services,

7

Governor Tommy G. Thompson. The highly qualified and diverse board will be led by Katherine Sandstrom, who is Healthpeak's current Board Chair.

"This strategic combination of leading platforms offers both near-term and future benefits for both companies," said Katherine Sandstrom, Chair of Healthpeak. "Together, we will be well-positioned to create significant value from our real estate, relationships, and platform while benefitting from the secular growth in demand from the universal desire for improved health."

Governor Tommy Thompson, Chair of Physicians Realty Trust added, "This transaction brings together the complementary portfolios and capabilities of two premier real estate companies and we are confident this combination provides all shareholders an unmatched opportunity to benefit from growth and upside in our combined portfolio and platform."

Upon completion of the merger, the combined company will operate with the Healthpeak Properties, Inc. name and is expected to trade under the ticker symbol "DOC" on the New York Stock Exchange. The headquarters of the combined company will be in Denver and it will maintain other existing offices.

**TRANSACTION DETAILS**

Under the terms of the agreement, each Physicians Realty Trust common share will be converted into 0.674 of a newly issued Healthpeak common share. Pro forma for the transaction, Healthpeak and Physicians Realty Trust shareholders will own approximately 77% and 23% of the combined company, respectively.

The all-stock merger is intended to be a tax-free transaction and is expected to close in the first half of 2024, subject to customary closing conditions, including the approval of both Healthpeak and Physicians Realty Trust shareholders. The respective boards of directors for Healthpeak and Physicians Realty Trust have unanimously approved the transaction.

**DIVIDEND**

Following the closing of the merger, the combined company is expected to pay an annualized dividend of $1.20 per share, consistent with Healthpeak's current dividend level and representing a pro forma AFFO payout ratio of 80% or below.

**DEBT FINANCING**

Healthpeak expects to assume Physicians Realty Trust's existing senior unsecured notes and term loan and to enter into a new five-year, $500 million term loan at a rate of SOFR plus 85 basis points. Proceeds from the term loan will be used for general corporate purposes including repayment of borrowings under Healthpeak's commercial paper program.

Pro forma net debt to EBITDAre is expected to be in the low 5x range.

**ADVISORS**

Barclays and Barclays & Co. LLC are serving as lead financial advisors, J.P. Morgan, Mizuho Securities USA LLC, RBC Capital Markets, and Wells Fargo are serving as additional financial advisors, and Latham & Watkins LLP is acting as legal advisor to Healthpeak.

BofA Securities and KeyBanc Capital Markets Inc. are serving as lead financial advisors, BMO Capital Markets Corp. is serving as financial advisor, and Baker McKenzie is acting as legal advisor to Physicians Realty Trust. BofA Securities provided a fairness opinion to Physicians Realty Trust in connection with the proposed transaction.

Barclays, BofA Securities, KeyBanc Capital Markets Inc., Barclays Senior Funding, Inc., J.P. Morgan, Mizuho Bank, Ltd., RBC Capital Markets, and Wells Fargo provided term loan commitments to Healthpeak.

**The Materially Incomplete and Misleading Prospectus**

23. On January 11, 2024, the Board caused to be filed a materially incomplete and misleading Prospectus with the SEC. The Prospectus, which recommends that Healthpeak stockholders vote their shares in favor of the Share Issuance and Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) Healthpeak's and Physicians' financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Barclays; and (iii) potential conflicts of interest faced by Barclays, Morgan Stanley and the Additional Financial Advisors.

*Material Misrepresentations and/or Omissions Concerning Healthpeak's and Physicians' Financial Projections*

24. The Prospectus fails to disclose material information concerning the financial projections for Healthpeak and Physicians.

25. For example, with respect to each of Healthpeak's and Physicians' projections, the Prospectus fails to disclose all line items underlying the calculation of: (i) Total Cash Net Operating Income ("Total Cash NOI"); (ii) EBITDA; (iii) Unlevered Free Cash Flow; (iv) Diluted FFO as adjusted; (v) Diluted AFFO; and with respect to Physicians, (vi) Adjusted EBITDA.

<u>Material Misrepresentations and/or Omissions Concerning Barclays' Financial Analyses</u>

26. The Prospectus fails to disclose material information concerning Barclays' financial analyses.

27. With respect to Barclays' *Discounted Cash Flow Analysis* for Healthpeak and Physicians, the Prospectus fails to disclose a quantification of: (i) the terminal values for each company; (ii) the inputs and assumptions underlying the discount rate ranges of 9.00% to 9.50% for Healthpeak and 8.50% to 9.00% for Physicians; (iii) each company's estimated net debt and enterprise value; (iv) Healthpeak's non-cash generating assets; and (v) the number of diluted shares outstanding of each of Healthpeak and Physicians.

28. With respect to Barclays's *Research Price Targets Analysis*, the Prospectus fails to disclose: (i) the individual price targets observed for each of Healthpeak and Physicians; and (ii) the sources thereof.

29. With respect to Barclays' *Research NAV Estimates Analysis*, the Prospectus fails to disclose: (i) the individual NAV estimates for each of Healthpeak and Physicians; and (ii) the sources thereof.

<u>Material Misrepresentations and/or Omissions Concerning Barclays', Morgan Stanley's and the Additional Financial Advisors' Potential Conflicts of Interest</u>

30. The Prospectus fails to disclose material information concerning the potential conflicts of interest faced by Barclays, Morgan Stanley and the Additional Financial Advisors.

31. Specifically, the Prospectus sets forth:

> Barclays has performed various investment banking and financial services for Healthpeak in the past, and expects to perform such services in the future, and has received, and expects to receive, customary fees for such services. Specifically, in the past two years, Barclays has performed the following investment banking and financial services: (i) having acted as active joint book-running manager in connection with a $350 million senior unsecured notes offering in May 2023; (ii) having acted as co-manager in connection with a $400 million senior unsecured notes offering in January 2023; and (iii) having acted as a Sales Agent and Forward Seller and Purchaser in connection with an approximately $68 million equity forward sale in September 2021. In addition, (1) Barclays is a lender under Healthpeak's existing credit facility and a dealer in Healthpeak's at-the-market equity program and will receive customary fees in connection therewith and (2) Barclays and certain of its affiliates also may be a lender in a new term loan that Healthpeak expects to enter into, for which services Barclays and its affiliates would expect to receive customary fees.

Prospectus at 66. The Prospectus, however, fails to disclose the amount of compensation Barclays has received for the services it has provided to Healthpeak since September 2021. Additionally, the Prospectus fails to disclose the amount of compensation Barclays expects to receive for serving as a lender under Healthpeak's existing credit facility and a dealer in Healthpeak's at-the-market equity program, as well as the fees Barclays would expect to receive for serving as a lender in a new term loan that Health peak expects to enter into.

32. Additionally, the Prospectus sets forth that on September 25, 2023, Healthpeak contacted Morgan Stanley to serve as a financial advisor to the Company in connection with the Proposed Transaction, and subsequently executed an engagement letter on October 24, 2023. The Prospectus, however, fails to disclose: (i) the amount of any compensation Morgan Stanley has received or expects to receive in connection with its engagement, including the amount of any compensation that is contingent upon closing of the Proposed Transaction; and (ii) whether Morgan Stanley has performed any services for any parties to the Merger Agreement in the prior two years and, if so, the details of the services performed and amount of compensation received.

11

33. Moreover, according to the October 30, 2023 press release announcing the Proposed Transaction:

> Barclays and Morgan Stanley & Co. LLC are serving as lead financial advisors, J.P. Morgan, Mizuho Securities USA LLC, RBC Capital Markets, and Wells Fargo are serving as additional financial advisors, and Latham & Watkins LLP is acting as legal advisor to Healthpeak.
>
> ***
>
> Barclays, BofA Securities, KeyBanc Capital Markets Inc., Morgan Stanley Senior Funding, Inc., J.P. Morgan, Mizuho Bank, Ltd., RBC Capital Markets, and Wells Fargo provided term loan commitments to Healthpeak.

The Prospectus, however, fails to disclose the fees that each of J.P. Morgan, Mizuho Securities USA LLC, RBC Capital Markets, and Wells Fargo (the "Additional Financial Advisors") stand to receive in connection with serving as financial advisors to the Company. The Prospectus further fails to disclose the amount of compensation the Additional Financial Advisors stand to receive in connection with providing term loan commitments to Healthpeak.

34. In sum, the omission of the above-referenced information renders statements in the "Healthpeak Unaudited Prospective Financial Information," "Physicians Realty Trust Unaudited Prospective Financial Information," "Opinion of Healthpeak's Financial Advisor," and "Background of the Mergers" sections of the Prospectus materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Healthpeak will be unable to make a sufficiently informed decision in connection with the Share Issuance and Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Healthpeak**

35. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

36. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Healthpeak is liable as the issuer of these statements.

37. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

38. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Share Issuance and Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

40. The Prospectus is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

41. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Healthpeak within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Healthpeak and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

47. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Healthpeak, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Prospectus;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Prospectus that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  January 30, 2024                                              **ACOCELLI LAW, PLLC**

By   */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*

16